Brian A. Knutsen, OSB No. 112266
Emma A. O. Bruden, OSB No. 163525
KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
Telephone: (503) 841-6515 (Knutsen)
            (503) 719-5641 (Bruden)
Email: brian@kampmeierknutsen.com
       emma@kampmeierknutsen.com

*Attorneys for Plaintiffs*
*Additional Counsel of Record Listed on Signature Page*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **WILLAMETTE RIVERKEEPER**; and **COLUMBIA RIVERKEEPER**, | Case No. 3:21-cv-00528 |
| Plaintiffs, | COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES |
| v. | |
| **ZENITH ENERGY TERMINALS HOLDINGS, LLC**, | (Pursuant to Clean Water Act, 33 U.S.C. § 1365(a)(1)) |
| Defendant. | |

## I.   INTRODUCTION

1.     This action is a citizen suit brought under section 505 of the Clean Water Act ("CWA") as amended, 33 U.S.C. § 1365. Plaintiffs, Willamette Riverkeeper and Columbia Riverkeeper (collectively "Riverkeepers"), seek declaratory and injunctive relief, the imposition of civil penalties, and the award of costs, including attorneys' and expert witness' fees, for

defendant Zenith Energy Terminals Holdings, LLC's ("Zenith") discharges of pollutants to waters of the United States without a National Pollutant Discharge Elimination System ("NPDES") permit in violation of the CWA.

## II.    JURISDICTION AND VENUE

2.      This Court has jurisdiction under 33 U.S.C. § 1365 (CWA citizen suit provision) and 28 U.S.C. § 1331 (federal question). Zenith is in violation of an "effluent standard or limitation" as defined by section 505(f) of the CWA, 33 U.S.C. § 1365(f). The requested relief is proper under 28 U.S.C. §§ 2201 and 2202 and 33 U.S.C. §§ 1319 and 1365.

3.      In accordance with section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), the Riverkeepers notified Zenith of the CWA violations alleged herein and of the Riverkeepers' intent to sue under the CWA for those violations by letter dated and postmarked January 11, 2021 ("Notice Letter"). A copy of the Notice Letter is attached to this complaint as Exhibit 1. In accordance with section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), and 40 C.F.R. § 135.2(a)(1), the Riverkeepers provided copies of the Notice Letter to the Administrator of the United States Environmental Protection Agency ("EPA"), the Administrator of EPA Region 10, the Director of the Oregon Department of Environmental Quality ("DEQ"), and Zenith's registered agent by mailing copies to these individuals on January 11, 2021.

4.      As of the filing of this complaint, more than sixty days have passed since the Riverkeepers mailed the Notice Letter as described in the preceding paragraph.

5.      Neither EPA nor DEQ has commenced any action constituting diligent prosecution to redress these violations. Specifically, neither EPA nor DEQ has commenced a civil or criminal action in a court of the United States or of a State to enforce against the violations alleged herein. *See* 33 U.S.C. § 1365(b)(1)(B).

6.      Zenith's violations of the CWA alleged herein are ongoing because, as of the filing of this complaint, the violations are continuing to occur and/or are reasonably likely to recur.

7.      Venue is appropriate in this District under section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the source of the violations complained of is located in this District, in Multnomah County, Oregon.

8.      A copy of this complaint will be served on the Attorney General of the United States, the Administrator of the EPA, and the Administrator of EPA Region 10 as required by section 505(c)(3) of the CWA, 33 U.S.C. § 1365(c)(3), and 40 C.F.R. § 135.4.

### III.    PARTIES

9.      Plaintiff Willamette Riverkeeper is suing on behalf of itself and its members and supporters. Willamette Riverkeeper is a 501(c)(3) non-profit corporation registered in the State of Oregon. The mission of Willamette Riverkeeper is to protect and restore the Willamette River's water quality and habitat and the resources of the Willamette River Basin. To achieve its mission, Willamette Riverkeeper has a range of programs and projects that span CWA compliance and river education to habitat restoration and Superfund cleanups under the Comprehensive Environmental Response, Compensation and Liability Act. This lawsuit is part of Willamette Riverkeeper's effort to ensure CWA compliance on the Willamette River for the benefit of the organization, its members and supporters, the public, and the environment.

10.     Willamette Riverkeeper has nearly 7,000 members and supporters. Willamette Riverkeeper has representational standing to bring this action on behalf its members, some of whom reside in the vicinity of waters affected by Zenith's discharges of pollutants. Members of Willamette Riverkeeper use and enjoy the waters and the surrounding areas that are adversely

affected by Zenith's discharges. Willamette Riverkeeper's members use these areas for, *inter alia*, fishing, swimming, hiking, walking, photography, boating, and observing wildlife. Zenith has violated the CWA by discharging pollutants to waters of the United States without the required NPDES permit. Willamette Riverkeeper and its members have concerns about the impacts of Zenith's discharges of stormwater associated with construction activity on the Willamette and Columbia Rivers. Zenith's construction activities and associated stormwater discharges degrade water quality in the Columbia River Basin, which includes the Willamette River Basin. The environmental, health, aesthetic, and recreational interests of Willamette Riverkeeper's members have been, are being, and will be adversely affected by Zenith's CWA violations addressed herein and by the members' reasonable concerns related to the effects of the violations and pollutant discharges. These injuries are fairly traceable to the violations and redressable by the Court.

11.    Plaintiff Columbia Riverkeeper is suing on behalf of itself and its members. Columbia Riverkeeper is a 501(c)(3) non-profit corporation registered in the State of Washington. The mission of Columbia Riverkeeper is to restore and protect the water quality of the Columbia River and all life connected to it, from the headwaters to the Pacific Ocean. To achieve these objectives, Columbia Riverkeeper implements scientific, educational, and legal programs aimed at protecting water quality and habitat in the Columbia River Basin. This lawsuit is part of Columbia Riverkeeper's effort to improve water quality in the Columbia River Basin for purposes including recreation, fish habitat quality, and subsistence and recreational fishing.

12.    Columbia Riverkeeper has representational standing to bring this action. Columbia Riverkeeper has over 16,000 members, some of whom reside in the vicinity of waters

affected by Zenith's discharges of pollutants. Members of Columbia Riverkeeper use and enjoy the waters and the surrounding areas that are adversely affected by Zenith's discharges. Columbia Riverkeeper's members use these areas for, *inter alia*, fishing, swimming, hiking, walking, photography, boating, and observing wildlife. Zenith has violated the CWA by discharging pollutants to waters of the United States without the required NPDES permit. Columbia Riverkeeper and its members have concerns about the impacts of Zenith's discharges of stormwater associated with construction activity on the Willamette River, a major tributary of the Columbia River. Zenith's construction activities and associated stormwater discharges degrade water quality in the Columbia River Basin. The environmental, health, aesthetic, and recreational interests of Columbia Riverkeeper's members have been, are being, and will be adversely affected by Zenith's CWA violations addressed herein and by the members' reasonable concerns related to the effects of the violations and pollutant discharges. These injuries are fairly traceable to the violations and redressable by the Court.

13.    Defendant Zenith Energy Terminals Holdings, LLC is a corporation authorized to conduct business under the laws of the State of Oregon.

14.    Zenith owns and/or operates the site located at 5501 NW Front Avenue, Portland, Oregon 97210 ("Portland Terminal"), located at approximately River Mile 8.31 on the Willamette River. As used herein, the term "Portland Terminal" or "Site" includes all areas located on or near 5501 NW Front Avenue and contiguous or adjacent properties that are owned or operated by Zenith Energy Terminals Holdings, LLC and/or its parent company, including all real property, conveyances, pipelines, storage tanks, rail lines, and point sources, including all areas associated with the proposed development or construction activity, and including areas proposed for temporary laydown or other construction work and any other areas proposed for

construction and/or modifications. Some or all of Zenith's construction activities at the Portland Terminal were or are in furtherance of its infrastructure development for the "Portland Renewable Fuel" project.

## IV.    LEGAL BACKGROUND

15.    Congress enacted the CWA to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a).

16.    As relevant here, section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits "the discharge of any pollutant by any person" unless such discharge is authorized by an NPDES permit issued under section 402 of the CWA, 33 U.S.C. § 1342.

17.    The CWA defines the term "discharge of a pollutant" to mean, in part, "any addition of any pollutant to navigable waters from any point source . . . ." 33 U.S.C. § 1362(12).

18.    Section 402(a) of the CWA empowers EPA or an authorized state to issue NPDES permits authorizing discharges of pollutants. 33 U.S.C. § 1342(a). The State of Oregon has established a federally-approved state NPDES program administered by the Oregon DEQ.

19.    Accordingly, DEQ may issue NPDES permits authorizing discharges of pollutants. Compliance with the terms and conditions of an NPDES permit is deemed compliance with the general discharge prohibition in section 301(a) of the CWA. 33 U.S.C. § 1342(k). Discharges of pollutants that are not authorized by an NPDES permit violate the CWA and are grounds for a citizen enforcement action. 33 U.S.C. §§ 1311(a), 1365(a)(1), 1365(f)(1).

20.    The CWA defines the term "point source" to mean, in part, "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or

vessel or other floating craft, from which pollutants are or may be discharged. * * *." 33 U.S.C. § 1362(14).

21.    The CWA defines the term "pollutant" to mean, in part, "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water. * * *." 33 U.S.C. § 1362(6).

22.    The CWA's prohibition on discharging pollutants from point sources applies broadly. The CWA defines the term "navigable waters" to mean "the waters of the United States, including the territorial seas." 33 U.S.C. § 1362(7). The CWA defines the term "person" to mean "an individual, corporation, partnership, association, State, municipality, commission, or political subdivision of a State, or any interstate body." 33 U.S.C. § 1362(5).

23.    The CWA regulates and requires an NPDES permit for stormwater discharges "associated with industrial activity." 33 U.S.C. § 1342(p)(2)(B), (p)(3)(A).

24.    The term "stormwater discharge associated with industrial activity" is defined to include stormwater discharges associated with construction activity, including clearing, grading, and excavation, except operations that result in the disturbance of less than five acres of total land area, but including disturbance of less than five acres of total land area that is a part of a larger common plan or development or sale if the larger common plan will ultimately disturb five acres or more. *See* 40 C.F.R. § 122.26(b)(14)(x). Further, beginning in 1994, discharges of stormwater associated with smaller construction activities are also subject to the NPDES permit requirement where certain conditions are present, including "[c]onstruction activities including clearing, grading, and excavating that result in land disturbance of equal to or greater than one

acre . . . ." *See id.* § 122.26(a)(9)(i)(B), (b)(15) (defining small construction activity subject to

NPDES permit requirements).

25.     DEQ has promulgated regulations to implement the NPDES program in the State

of Oregon. The regulations provide that a person must obtain a valid NPDES permit before

discharging stormwater associated with construction actives that are subject to EPA's permit

requirements identified above. Or. Admin. R. 340-045-0015(2).

26.     DEQ has issued a general permit for discharges of stormwater associated with

construction activity. The prior iteration of DEQ's construction stormwater general permit was

issued in December 2015 and expired on December 14, 2020 ("2015 Permit").

27.     To obtain coverage under the 2015 Permit, an applicant must have submitted, at

least thirty days before any planned land disturbance an application, an approved Land Use

Compatibility Statement and an Erosion and Sediment Control Plan. 2015 Permit, Schedule A1.

28.     DEQ issued a new general permit for discharges of stormwater associated with

construction activity that became effective on December 15, 2020, and that has an expiration

date of December 14, 2025 ("2020 Permit").

29.     To obtain coverage under the 2020 Permit, an applicant must submit at least thirty

days before any planned land disturbance or construction activities an application, an Erosion

and Sediment Control Plan and a Land Use Compatibility Statement indicating that the proposed

activities are compatible with the local government's acknowledged comprehensive plan. 2020

Permit, Schedule A1.2.2.

30.     Both the 2015 and 2020 Permits require the implementation of best management

practices to reduce erosion and otherwise minimize stormwater contamination, to inspect and

monitor the site and associated discharges, and to take corrective actions where problems are

identified. 2015 Permit, Schedule A7–9, A12–13, B1; 2020 Permit, Schedule A2, A3–5, B6.

## V.    FACTS

31.    Zenith's construction at the Portland Terminal is subject to the NPDES permit requirements described above. The project will generate and has generated discharges of stormwater associated with construction activity, including clearing, grading, and excavation, and the project will result in the disturbance of five or more acres of total land or less than five acres of total land area that is a part of a larger common plan or development or sale with the larger common plan ultimately disturbing five acres or more. *See* 40 C.F.R. § 122.26(b)(14)(x). Alternatively, the project is subject to the NPDES permit requirements as a small construction activity under 40 C.F.R. § 122.26(a)(9)(i)(B), (b)(15).

32.    Upon information and belief, Zenith commenced construction activities at the Portland Terminal on or around April 2020. Zenith's construction activities at the Portland Terminal have included, but are not limited to, removal of trees, clearing, site grading, construction of a silt fence around the majority of the proposed construction area, and/or similar ground-disturbing activities.

33.    Zenith applied for coverage under the 2015 Permit on May 8, 2020, for the Portland Renewable Fuel project.

34.    On July 16, 2020, DEQ informed Zenith that Zenith would need to submit a new Land Use Compatibility Statement from the City of Portland before DEQ could process Zenith's application for coverage under the 2015 Permit.

35.    Zenith submitted a new Land Use Compatibility Statement application to the City of Portland on or about August 14, 2020.

36.    On September 9, 2020, the City's Bureau of Development Services requested

additional information from Zenith before the City would process Zenith's Land Use

Compatibility Statement application any further.

37.    On January 29, 2021, Zenith provided the additional information to the City's

Bureau of Development Services. As of the filing of this complaint, the City had not yet issued a

Land Use Compatibility Statement to Zenith.

38.    As of the filing of this complaint, Zenith has not submitted a complete and current

application to DEQ for coverage under the 2020 Permit for the Portland Terminal.

39.    As of the filing of this complaint, DEQ has not granted coverage to Zenith under

the 2015 Permit or 2020 Permit for Site. Nor has Zenith obtained any other NPDES permit

coverage for discharges of stormwater associated with construction activity from the Site as of

the filing of this complaint.

40.    The Site discharges stormwater associated with industrial activity—i.e.,

stormwater associated with construction activity—every time there is sufficient precipitation to

generate a discharge from the Site, including whenever there is at least 0.1 inches of precipitation

in a twenty-four hour period.

41.    The Site discharges such construction stormwater via pipes, ditches, culverts,

channels, stormwater conveyance systems, and other point sources to the Willamette River and

eventually the Columbia River, which are waters of the United States.

42.    Zenith has violated and continues to violate section 301(a) of the CWA each time

it discharges stormwater associated with construction activity from the Site to waters of the

United States, including each time there is at least 0.1 inches of precipitation in a twenty-four

hour period.

43.    These illegal discharges include, but are not limited to, those that occurred on the

dates identified in the following table:

| Dates of Alleged Violations |
|---|
| April 1, 3, 19, 22, 23, 25, 26, 27, 2020 |
| May 2, 3, 11, 12, 13, 14, 15, 16, 17, 18, 19, 21, 30, 31, 2020 |
| June 5, 6, 7, 8, 9, 10, 13, 14, 15, 16, 17, 20, 21, 2020 |
| August 6, 21, 2020 |
| September 18, 23, 24, 25, 26, 2020 |
| October 10, 11, 12, 13, 14, 2020 |
| November 3, 4, 5, 6, 7, 12, 13, 14, 15, 16, 17, 18, 19, 23, 24, 25, 28, 30, 2020 |
| December 1, 6, 8, 9, 11, 12, 13, 14, 15, 16, 18, 19, 20, 21, 22, 25, 26, 27, 30, 31, 2020 |
| January 1, 2, 3, 4, 5, 6, 7, 8, 10, 11, 12, 13, 15, 21, 24, 25, 26, 27, 28, 30, 31, 2021 |
| February 1, 2, 3, 5, 7, 12, 13, 14, 15, 18, 19, 22, 23, 24, 26, 27, 2021 |
| March 5, 6, 7, 14, 15, 18, 19, 20, 21, 22, 24, 25, 26, 28, 29, 2021 |

44.    Upon information and belief, Zenith's discharges of stormwater associated with construction activity from the Site in violation of section 301(a) of the CWA as alleged herein are ongoing because they are continuing to occur and/or are reasonably likely to recur.

45.    Zenith's unpermitted discharges of pollutants to the Willamette and Columbia Rivers degrade the environment and the water quality of the Columbia River Basin, including the Willamette River Basin. Zenith's unpermitted discharges of pollutants foul waters where the Riverkeepers' members live, work, recreate, fish, and engage in other activities.

46.    Zenith's unpermitted discharges of pollutants were avoidable had Zenith been diligent in overseeing and controlling operations, maintenance, monitoring, and compliance with regulatory laws.

47.    Zenith has benefitted economically from its unpermitted discharges of pollutants.

48.    Any and all additional violations of the CWA by Zenith that occur or are discovered after those described in the Notice Letter but before a final decision in this action are continuing violations subject to this complaint.

49.    Without the imposition of appropriate civil penalties and/or the issuance of an

injunction and other relief, Zenith is likely to continue to violate the CWA to the further injury of the Riverkeepers, their members and supporters, and others.

## VI.    CAUSE OF ACTION

50.    The Riverkeepers hereby allege and incorporate by reference all of the preceding paragraphs.

51.    Zenith is a "person" within the meaning of section 301(a) of the CWA, 33 U.S.C. §1311(a), and is subject to suit under the CWA's citizen suit provision, 33 U.S.C. § 1365.

52.    Zenith has violated and is violating section 301(a) of the CWA, 33 U.S.C. § 1311(a), by discharging pollutants from a point source to waters of the United States. These are violations of an "effluent standard or limitation" as that term is defined by section 505(f) of the CWA, 33 U.S.C. § 1365(f). These violations are ongoing.

## VII.    RELIEF REQUESTED

WHEREFORE, the Riverkeepers respectfully request that the Court grant the following relief:

A.    Declare that Zenith has violated and continues to be in violation of the CWA as alleged herein;

B.    Issue injunctive relief requiring Zenith to comply with the CWA;

C.    Issue injunctive relief requiring Zenith to remediate the environmental damage and ongoing impacts resulting from its illegal discharges of pollutants;

D.    Issue such other preliminary and/or permanent injunctive relief as the Riverkeepers may request during the pendency of this litigation;

E.    Order Zenith to provide the Riverkeepers with copies of all reports and other documents that Zenith submits to or receives from EPA or DEQ regarding discharges of

pollutants from the Site at the time the reports or documents are submitted to or received from those authorities, for a period of two years after completion of this case;

F.     Order Zenith to pay civil penalties for each CWA violation pursuant to sections 309(d) and 505(a) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a), and 40 C.F.R. § 19;

G.     Award the Riverkeepers their litigation expenses, including reasonable attorneys' and expert witness fees, as authorized by section 505(d) of the CWA, 33 U.S.C. § 1365(d), or as otherwise authorized by law; and

H.     Award such other relief as this Court deems appropriate.

RESPECTFULLY SUBMITTED this 8th day of April 2021.

KAMPMEIER & KNUTSEN PLLC

By:  s/ Brian A. Knutsen
       Brian A. Knutsen, OSB No. 112266
By: s/ Emma A. O. Bruden
       Emma A. O. Bruden, OSB No. 163525
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
Telephone: (503) 841-6515 (Knutsen)
                 (503) 719-5641 (Bruden)
Email: brian@kampmeierknutsen.com
          emma@kampmeierknutsen.com

*Attorneys for Plaintiffs*

COLUMBIA RIVERKEEPER

By: s/ Erin K. Saylor
       Erin K. Saylor, OSB No. 085725
1125 SE Madison St., Ste. 103A
Portland, Oregon 97214
Telephone: (541) 399-4775
Email: erin@columbiariverkeeper.org

*Attorney for Plaintiff Columbia Riverkeeper*

WILLAMETTE RIVERKEEPER

By: s/ Elisabeth Holmes
       Elisabeth Holmes, OSB No. 120254
Willamette Riverkeeper
P.O. Box 293
Eugene, Oregon 97440
Telephone: (541) 870-7722 (no facsimile)
Email: eli@willametteriverkeeper.org

*Attorney for Plaintiff Willamette Riverkeeper*

COMPLAINT – 13

# Exhibit 1

# KAMPMEIER & KNUTSEN PLLC

## ATTORNEYS AT LAW

BRIAN A. KNUTSEN
Licensed in Oregon & Washington
503.841.6515
brian@kampmeierknutsen.com

January 11, 2021

**Via CERTIFIED MAIL – Return Receipt Requested**

| | |
|---|---|
| Managing Agent | Managing Agent |
| Zenith Energy Terminals Holdings, LLC | Zenith Energy Terminals Holdings, LLC |
| 3900 Essex Lane, Suite 700 | 5501 NW Front Ave. |
| Houston, TX 77027 | Portland, OR 97210 |

Re:     **Notice of Intent to File Suit for Violations of the Clean Water Act: Discharges of Pollutants without Required National Pollution Discharge Elimination System Permit (Oregon Permit No. 1200-C for Construction Stormwater Discharges)**

Dear Sirs and Madams:

This letter is submitted on behalf of Columbia Riverkeeper and Willamette Riverkeeper ("Riverkeepers"). This letter provides you with notice that Zenith Energy Terminal Holdings, LLC ("Zenith") is in violation of the Clean Water Act ("CWA") for impermissibly discharging pollutants without obtaining a National Pollution Discharge Elimination System ("NPDES") permit as required; specifically, without obtaining coverage under Oregon's 1200-C Construction Stormwater General Permit ("General Permit")[1] or an individual NPDES permit. This letter further provides notice that the Riverkeepers intend to file a civil suit citizen action in the federal district court in the District of Oregon under § 505 of the CWA, 33 U.S.C. § 1365, for these violations at the expiration of a sixty-day notice period initiated with this letter.

Zenith has and continues to violate § 301(a) of the CWA, 33 U.S.C. § 1311(a), by discharging pollutants to waters of the United States and the State of Oregon from its facility, and construction related activities thereon, located at 5501 NW Front Avenue, Portland, Oregon, 97210 ("Portland Terminal"). The Portland Terminal is located at approximately River Mile 8.31 on the Willamette River. As used herein, the terms "Portland Terminal" or "site" include all areas located on or near 5501 NW Front Avenue and contiguous or adjacent properties that are owned or operated by Zenith Energy Terminal Holdings and its parent company, including all real property, conveyances, pipelines, storage tanks, rail lines, and point sources. As described herein, Zenith is discharging pollutants, including stormwater associated with construction

---

[1] Oregon Department of Environmental Quality ("DEQ") issued a 1200-C Construction Stormwater General Permit effective December 15, 2015, which expired December 14, 2020 ("2015 General Permit"); Oregon's next 1200-C General Permit became effective December 15, 2020 and expires December 14, 2024 ("2020 General Permit"). Collectively these are herein referred to as the "General Permit."

activity, from the site to waters of the United States without the authorization of an NPDES permit, in violation of the CWA.

The lawsuit will allege that since at least April 1, 2020, if not earlier, Zenith has been obligated to apply for, obtain, operate under, and comply with the General Permit, that Zenith has failed to do so and has instead unlawfully discharged pollutants without an NPDES permit, and that such violations of the CWA have harmed and will continue to harm the Willamette River, the Columbia River, the Riverkeepers, and their members and supporters. This letter constitutes notice pursuant to 33 U.S.C. § 1365(b), and 40 C.F.R. Part 135 (the "Notice").

## I.    THE RIVERKEEPERS.

Willamette Riverkeeper is a "citizen" within the meaning of 33 U.S.C. § 1365(g). Willamette Riverkeeper, its 2,500 members, and thousands of supporters have an interest which is adversely affected by Zenith's violations of the CWA alleged herein. Willamette Riverkeeper is a small 501(c)(3) not-for-profit organization with eight staff members. Willamette Riverkeeper was founded in 1996, and serves as the eyes, ears, and voice of the Willamette River. For more than 20 years, the organization's sole mission has been to protect and restore the Willamette River's water quality and habitat and the resources of the Willamette River Basin. Willamette Riverkeeper's work focuses on the health of the river's natural ecosystem, which is inseparable from the quality of life of the river's community, including many members and supporters of Willamette Riverkeeper, who live, work, and recreate in the river (including the stretches of the river subject to this notice letter and Zenith's activities described herein), its tributaries and side channels, and its surrounding watershed. Willamette Riverkeeper believes that a river with good water quality and abundant natural habitat for wildlife – including threatened species, and that is safe for fishing and swimming, is a basic public right. Willamette Riverkeeper engages in public outreach and education, advocacy with agencies, agency administrative processes, and where necessary, litigation.

Columbia Riverkeeper is a "citizen" within the meaning of 33 U.S.C. § 1365(g). Columbia Riverkeeper's mission is to restore and protect the water quality of the Columbia River and all life connected to it, from the headwaters to the Pacific Ocean. Columbia Riverkeeper is a non-profit organization with members who live, recreate, and work throughout the Columbia River basin, including in areas affected by discharges from the Portland Terminal.

Water quality standards are designed to protect designated uses, including aquatic life, fishing, swimming, and drinking water. Zenith's construction stormwater discharges flow into a municipal storm sewer or other stormwater conveyance system, and possibly directly into the Willamette River. The Willamette River in turn flows to the Columbia River. Stormwater runoff is "one of the great challenges of water pollution control" and "is a principal contributor to water quality impairment of waterbodies nationwide." *See Urban Storm Management in the United States*, National Research Council (Oct. 15, 2008). When rain sends runoff across streets, construction projects, and industrial facilities, the water picks up contaminants that are drained into waterways such as the Willamette River, its tributaries, and the Columbia River. To address this leading cause of water quality impairment, Riverkeepers invest significant time and

resources in reducing pollutant loads from industrial, municipal, and construction stormwater sources.

This Notice is part of Riverkeepers' respective missions to improve water quality in the Willamette and Columbia River Basins for various purposes including swimming, habitat quality, and subsistence, recreational, and commercial fishing. Zenith has failed to obtain the legally required 1200-C Permit coverage prior to commencing construction activities at the Portland Terminal.

## II.    PERSONS RESPONSIBLE FOR ALLEGED VIOLATIONS.

Zenith is a person, as defined by § 502(5) of the CWA, 33 U.S.C. § 1362(5), responsible for the alleged violations in this Notice. Zenith has owned and operated the Portland Terminal since December 2018. Accordingly, Zenith is responsible for managing construction stormwater in compliance with the CWA at the Portland Terminal.

## III.    LEGAL FRAMEWORK AND CONSTRUCTION STORMWATER.

Congress enacted the CWA to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). To effect that policy, and as relevant here, § 301(a) of the CWA prohibits discharges of pollutants in the absence of an NPDES permit issued by the U.S. Environmental Protection Agency ("EPA") or an authorized state. *See id.* at §§ 1311(a), 1342. The NPDES permitting scheme is the primary means by which discharges of pollutants are controlled. At a minimum, NPDES permits must include technology-based effluent limitations, any more stringent limitations necessary to meet water quality standards, and monitoring and reporting requirements. *See id.* at §§ 1311, 1342, 1318. In the State of Oregon, the Oregon Department of Environmental Quality ("DEQ") is authorized to administer the NPDES program.

The CWA defines the term "discharge of a pollutant," in part, as "any addition of any pollutant to navigable waters from any point source." *Id.* at § 1362(12). The term "point source" is defined as "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged." *Id.* § 1362(14). The CWA defines "pollutant" to include "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial . . . waste discharged into water." *Id.* § 1362(6). Section 402(p)(3)(A) of the CWA, 33 U.S.C. § 1342(p)(3)(A), makes clear that "stormwater discharges associated with industrial activity" that are not authorized by an NPDES permit violate § 301(a) of the CWA.

EPA has defined the term "stormwater discharge associated with industrial activity" to include stormwater discharges associated with any construction activity, including clearing, grading, and excavation, except operations that result in the disturbance of less than five acres of total land area, but including disturbance of less than five acres of total land area that is a part of a larger common plan or development or sale if the larger common plan will ultimately disturb

five acres or more. *See* 40 C.F.R. § 122.26(b)(14)(x). Beginning in 1994, discharges of stormwater associated with smaller construction activities are also subject to the NPDES permit requirement where certain conditions are present, including "[c]onstruction activities including clearing, grading, and excavating that result in land disturbance of equal to or greater than one acre . . . ." *See id.* §§ 122.26(a)(9)(i)(B), (b)(15) (defining small construction activity subject to NPDES permit requirements).

The DEQ has promulgated regulations to implement the NPDES program in the State of Oregon. In particular to construction activities, Oregon's regulations provide that a person must obtain a valid NPDES permit before discharging stormwater associated with construction activities that are subject to EPA's permit requirements identified above. Or. Admin. R. 340-045-0015(2). In December 2015, and again in December 2020, DEQ issued a statewide NPDES General Permit for discharges of stormwater associated with construction activity. To obtain coverage under the General Permit, an applicant must submit an application at least thirty days before any planned land disturbance, including an approved Land Use Compatibility Statement ("LUCS"), and an Erosion and Sediment Control Plan. *See, e.g.,* General Permit, Schedule A.1 "Eligibility Conditions." The General Permit requires the implementation of best management practices to reduce erosion and otherwise minimize stormwater contamination, inspect and monitor the site and associated discharges, and take corrective actions where problems are identified. *See, e.g.*, 2015 General Permit, Schedule A7–9, A12–13, and B1; 2020 General Permit, Schedule A2, A3–5, B6.

## IV.     UNPERMITTED DISCHARGES OF POLLUTANTS IN VIOLATION OF THE CLEAN WATER ACT.

Zenith is undertaking construction activities at its Portland Terminal that are subject to the NPDES permit requirements described above. Zenith applied for coverage under DEQ's 2015 General Permit on May 8, 2020, for Zenith's "Portland Renewable Fuel" Project. On July 16, 2020, DEQ informed Zenith that Zenith would need to submit a new LUCS from the City of Portland before DEQ could process Zenith's application for coverage under the General Permit any further. Zenith submitted a new LUCS application to the City of Portland on or about August 14, 2020. On September 9, 2020, the City's Bureau of Development Services requested additional information from Zenith before the City would process Zenith's LUCS application any further. On December 14, 2020, Oregon's 2015 General Permit expired. Oregon's new 2020 General Permit became effective on December 15, 2020 and expires on December 14, 2025. As of the date of this letter, Zenith had not submitted further information to the City in support of its LUCS application, nor has it obtained coverage under the General Permit or any other NPDES permit for its discharges of stormwater associated with construction activity associated with the Portland Renewable Fuel Project.

Upon information and belief, and as demonstrated through the photographs contained in Exhibit 1 attached hereto, starting in at least April 2020 and continuing through the date of this letter, Zenith has conducted and continues to conduct a number of construction activities at the Portland Terminal in furtherance of its infrastructure for the "Portland Renewable Fuel" project, including but not limited to removal of trees, site grading, and construction of a silt fence around the majority of the proposed construction area.

4

Zenith has discharged stormwater associated with industrial activity—i.e., stormwater associated with construction activity—every time since commencing construction activity that there has been sufficient precipitation to generate a discharge from the site, including whenever there is at least 0.1 inches of precipitation in a twenty-four hour period. Zenith's site discharges such construction stormwater via pipes, ditches, channels, stormwater conveyance systems, and other point sources to the Willamette River, which in turn flows to the Columbia River.

Zenith has violated and will continue to violate § 301(a) of the CWA each time it discharges stormwater associated with construction activity from the site to the waters of the United States and the State of Oregon, including each time since construction activity began for the Portland Renewable Fuel project that there is at least 0.1 inches of precipitation in a twenty-four hour period. Upon information and belief, these violations have occurred, including but not limited to, the dates identified in the following table:

| Dates of Alleged Violations |
|---|
| April 1, 3, 19, 22, 23, 25, 26, 27, 2020 |
| May 2, 3, 11, 12, 13, 14, 15, 16, 17, 18, 19, 21, 30, 31, 2020 |
| June 5, 6, 7, 8, 9, 10, 13, 14, 15, 16, 17, 20, 21, 2020 |
| August 6, 21, 2020 |
| September 18, 23, 24, 25, 26, 2020 |
| October 10, 11, 12, 13, 14, 2020 |
| November 3, 4, 5, 6, 7, 12, 13, 14, 15, 16, 17, 18, 19, 23, 24, 25, 28, 30, 2020 |
| December 1, 6, 8, 9, 11, 12, 13, 14, 15, 16, 18, 19, 20, 21, 22, 25, 26, 27, 30, 31, 2020 |
| January 1, 2, 3, 4, 6, 8, 10, 2021 |

## V.    WATERS AFFECTED

The Portland Terminal transports stormwater and discharges it into the "Waters of the United States" within the meaning of § 502(7) of the CWA, 33 U.S.C. § 1362(7). The Portland Terminal, Zenith's stormwater system, and the City's stormwater system or drainage system discharges to the Willamette River, which empties into the Columbia River.

The Willamette River is critical habitat for species federally-protected under the Endangered Species Act, including Lower Columbia River ("LCR") Chinook salmon, LCR coho, and LCR steelhead below Willamette Falls; other species listed as threatened above Willamette Falls must pass through the section of the Willamette River where the Portland Terminal is located. In addition to statewide water quality criteria (*see, e.g.,* OAR 340-041-007 to 0061), and the state's antidegradation policy (OAR 340-041-0004), the Willamette River has basin-specific water quality criteria applicable to this section of the river. *See, e.g.,* OAR 340-041-0340 (Willamette River Basin specific criteria for beneficial uses to be protected), -0344 (TMDLs), and -0345 (Willamette River water quality). Waters reaching the Columbia River are also subject to Columbia-specific water quality criteria. *See, e.g.,* OAR 340-041-0101 (Columbia River Basin specific criteria for beneficial uses), -0103 (approved TMDLs), and -0104 (Columbia River water quality).

As the owner and operator of a facility undertaking construction activities, Zenith is required to apply for, obtain, and comply with the requirements of the General Permit or anther NPDES permit in order to lawfully discharge stormwater from its construction activity. Since Zenith has failed to complete these steps, it is discharging in violation of the CWA. Since at least April 1, 2020, Zenith has undertaken construction activities at the Portland Terminal without obtaining or complying with an NPDES permit and is instead discharging construction stormwater to these waters without a permit in violation of the CWA.

## VI.   RELIEF REQUESTED

Zenith is liable for the above-described violations occurring prior to the date of this letter and for every day these violations continue. The Riverkeepers intend, at the close of the sixty-day notice period, to file a citizen lawsuit under § 505 of the CWA against Zenith for declaratory, injunctive, and remedial relief, for civil penalties for each day of each violation, and for an award of costs, including attorney and expert witness fees, and such other relief as may be appropriate. *See* 33 U.S.C. § 1319(d).

Pursuant to § 309(d) of the CWA, 33 U.S.C. § 1319(d), and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. §§ 19.2, 19.4, each separate violation of the CWA subjects Zenith to a penalty of up to $56,460 per day. *See* 85 Fed. Reg. 83,818, 83,820 (Dec. 23, 2020). For the violations identified in this letter, including each and every day that Zenith has discharged without a required NPDES permit, the Riverkeepers intend to seek the maximum penalty amount authorized. Lastly, the Riverkeepers will seek to recover their litigation costs pursuant to 33 U.S.C. § 1365(d), including reasonable attorney and expert fees.

## VII.   ADDRESSES AND TELEHONE NUMBERS FOR RIVERKEEPERS.

The full names, addresses, and telephone numbers of the persons giving notice to file a citizen lawsuit under the Clean Water Act are:

Willamette Riverkeeper                  Columbia Riverkeeper
403 SE Caruthers St, Suite 101          407 Portway Avenue, Suite 301
Portland, OR 97214                      Hood River, Oregon 97031
(503) 223-6418                          (541) 399-5312

## VIII.    ATTORNEYS REPRESENTING RIVERKEEPERS.

The attorneys representing the Riverkeepers in this matter are:

FOR COLUMBIA RIVERKEEPER AND WILLAMETTE RIVERKEEPER

Brian A. Knutsen,
Kampmeier & Knutsen, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
Tel. (503) 841-6515
Email: brian@kampmeierknutsen.com

COLUMBIA RIVERKEEPER

Erin Saylor, Staff Attorney
Columbia Riverkeeper
1125 SE Madison Street, Suite 103A
Portland, Oregon 97214
Tel: (541) 399-4775
Email: erin@columbiariverkeeper.org

WILLAMETTE RIVERKEEPER

Elisabeth Holmes, Staff Attorney
Willamette Riverkeeper
P.O. Box 293
Eugene, Oregon 97440
Tel: (541) 870-7722
Email: eli@willametteriverkeeper.org

## IX.    CONCLUSION.

The above-described violations reflect those indicated by the information currently available to Riverkeepers. These violations are ongoing. Riverkeepers intend to sue for all violations, including those yet to be uncovered and those committed after the date of this notice of intent to sue.

Riverkeepers believe that this Notice of Intent to Sue sufficiently states grounds for filing suit. If you believe that any of the allegations in this Notice are incorrect or based on incomplete information in the public record, please bring those facts to our attention. Riverkeepers intend, at the close of the sixty-day notice period, or shortly thereafter, to file a citizen suit against Zenith Energy Terminal Holdings LLC under § 505(a) of the CWA for the violations described herein.

Sincerely,

 s/ Brian A. Knutsen
Brian A. Knutsen
Kampmeier & Knutsen PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
Tel. (503) 841-6515
Email: brian@kampmeierknutsen.com

7

 s/ Erin Saylor

Erin Saylor, Staff Attorney
Columbia Riverkeeper
1125 SE Madison Street, Suite 103A
Portland, Oregon 97214
Tel: (541) 399-4775
Email: erin@columbiariverkeeper.org


 s/ Elisabeth Holmes

Elisabeth Holmes, Staff Attorney
Willamette Riverkeeper
P.O. Box 293
Eugene, Oregon 97440
Tel. (541) 870-7722
Email: eli@willametteriverkeeper.org

c. Allison Reynolds, Stoel Rives (via email only)
Enclosures: Exhibit 1 (photographs and Google Earth images)

## CERTIFICATE OF SERVICE

I, Brian A. Knutsen, declare under penalty of perjury of the laws of Oregon and the

United States that I am co-counsel for Columbia Riverkeeper and Willamette Riverkeeper and

that on January 11, 2021, I caused copies of the foregoing Notice of Intent to Sue Under the

Clean Water Act to be served on the following by depositing them with the United States Postal

Service, certified mail, return receipt requested, postage prepaid:

Managing Agent
Zenith Energy Terminals Holdings, LLC
3900 Essex Lane, Suite 700
Houston, TX 77027

Managing Agent
Zenith Energy Terminals Holdings, LLC
5501 NW Front Ave.
Portland, OR 97210

Registered Agent
C T Corporation System
780 Commercial St SE, STE 100
Salem, OR 97301

Director Richard Whitman
Oregon Department of Environmental Quality
700 N.E. Multnomah Street, Suite 600
Portland, OR 97232-4100

Administrator Andrew Wheeler
U.S. Environmental Protection Agency
William Jefferson Clinton Building
1200 Pennsylvania Ave., N.W. (Mail Code 1101A)
Washington DC 20460

Regional Administrator Christopher W. Hladick
U.S. Environmental Protection Agency, Region 10
1200 Sixth Avenue, Suite 155
Seattle, WA 98101

Brian A. Knutsen, OSB No. 112266

# EXHIBIT 1

DEQ Stormwater Permit Application: Received by DEQ on 5/11/2020

**May 2019 Google Earth Aerial Image:**



**September 2019 Google Maps Street View:**



**April 2020 Site Pictures:**









**May 2020 Site Photos:**





**June 2020 Site Photos:**







**July 2020 Site Photos:**



